IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| In Re: ) | Case No. 9:11-BK-07437-FTM |
| ) | Chapter 7 |
| PETER T. DVORAK, ) | |
| Debtor. ) | |
| _____/ ) | |
| THOMAS C. HUFF and KATHLEEN L. HUFF, ) | Adv. No. |
| Plaintiffs, ) | |
| v. ) | |
| PETER T. DVORAK, ) | |
| Defendant. ) | |
| _____/ ) | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

Plaintiffs, THOMAS C. HUFF and KATHLEEN L. HUFF, by and through their undersigned counsel and pursuant to 11 U.S.C. Section 523 and Rule 4007, Federal Rules of Bankruptcy Procedure, sue Defendant, PETER T. DVORAK, and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an adversary proceeding to determine the dischargeability of a debt pursuant to 11 U.S.C. Section 523.

2. Plaintiffs, THOMAS C. HUFF and KATHLEEN L. HUFF, are residents of Warren County Ohio, residing at 6899 Heritage Club Drive, Mason, Ohio 45040.

3. Defendant/Debtor, PETER T. DVORAK, is an individual debtor in the above-captioned Chapter 7 proceeding whose current residency is unknown to Plaintiffs.

4. Defendant is, or was, a resident of Monroe County, Indiana, residing at 3671 East Bluebird Lane, Bloomington, Indiana 47401-9470.

5. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. Section 157(b)(2)(i) and 28 U.S.C. Section 1334.

6. Venue is proper in this district pursuant to 28 U.S.C. Section 1409.

## FACTUAL ALLEGATIONS

7. Defendant is or was a member of Pinnacle Hospitality Group II, LLC ("PHG"), which is a limited liability company organized and existing under the laws of the State of Indiana.

8. On or about March 5, 2008, Plaintiffs entered into an agreement with Defendant through which they purchased 15.16% of Defendant's membership interest in PHG.

9. As consideration for their purchase of said membership interest, Plaintiffs paid Defendant $500,000 by way of two (2) wire transfers.

10. On or about March 5, 2008, Plaintiffs entered into a separate agreement with Defendant under which Defendant agreed to repurchase Plaintiffs' membership interest in PHG on or before September 5, 2010, unless extended, but in no event later than March 5, 2011.

11. Defendant affirmatively represented to Plaintiffs that PHG was formed for the purpose of constructing and operating a hotel in Bloomington, Indiana and that the funds received from Plaintiffs would be used for that purpose.

12. Despite receipt of Plaintiffs' funds and upon information and belief, PHG never obtained permits for construction, never commenced construction, and did not secure financing for construction or operation of any hotel.

13. Upon information and belief, Defendant converted the $500,000 paid by Plaintiffs to his own use or to the benefit of a third party.

14. In August 2009, Defendant advised Plaintiffs, as well as other third parties with whom Defendant had relationships on other projects, that he was experiencing financial difficulties and was attempting to work with lenders and investors to resolve those difficulties. Defendant presented Plaintiffs with a proposal under which he would retain certain "core" properties and surrender other "non-core" properties to lenders. The hotel project in Bloomington, Indiana was identified as one of the "core" projects Defendant intended to retain.

15. Thereafter, Plaintiffs maintained a series of communications with Defendant in which they requested that he provide them with information relating to the financial affairs and operations of PHG.

16. On or about October 30, 2009, Plaintiffs sent an e-mail to Defendant, specifically requesting copies of tax returns and financial statements for PHG.

17. Defendant failed and refused to respond to the e-mail or provide the requested information.

18. On November 9, 2009, Plaintiffs wrote to Defendant and PHG, through its statutory agent, and made a request for immediate access to all PHG company books and records, including minutes of meetings, operating agreements, financial statements, tax returns, bank account records, contracts, wage and payment records, correspondence to and from accountants and tax preparers, and the membership records of the company.

19. Defendant and PHG failed and refused to respond to the November 9, 2009 correspondence and request for information.

20. On November 24, 2009, Plaintiffs again wrote to Defendant and PHG requesting inspection and copying of the books and records of PHG.

21. On December 3, 2009, counsel for Defendant contacted Plaintiffs' counsel by telephone and e-mail regarding the request for information and advised that the requested information was located in multiple boxes at different locations and would be difficult to locate.

22. In response, Plaintiffs offered to travel to the principal place of business for PHG or to the location where the information was maintained to undertake the work necessary to identify and copy the company records of PHG. With respect to information in the custody of a third party such as an attorney, accountant, financial institution, or tax preparer, Plaintiffs simply requested the identity of the record's custodian to arrange directly with that party to obtain the information.

23. On or about December 17, 2009, counsel for Defendant contacted Plaintiffs' counsel and advised that Defendant would be handling the delivery of PHG company information without further involvement of legal counsel. Defendant was copied on the e-mail communication authorizing direct communication with Plaintiffs' counsel to arrange for the delivery of the requested company information.

24. On December 18, 2009, Plaintiffs' counsel sent an e-mail to Defendant requesting that he make the records and information available for inspection on January 6, 2010.

25. Defendant failed and refused to respond to the e-mail communication.

26. On or about January 4, 2010, Plaintiffs' counsel sent another e-mail to Defendant requesting that he confirm January 6, 2010 as the date for Plaintiffs to inspect and copy the company records of PHG.

27. On or about January 5, 2010, Defendant responded to the e-mail and offered to provide the available documents, together with a list of unavailable documents and the reasons therefore, to avoid an on-site inspection.

28. In response, Plaintiffs' counsel advised Defendant that production of the requested information in that manner was acceptable, but that a date certain would be needed for the delivery of the information. Defendant agreed to produce the requested information on or before January 12, 2010.

29. Defendant failed and refused to provide the information and documents on January 12, 2010, as agreed.

30. On or about January 19, 2010, Plaintiffs' counsel again sent an e-mail to Defendant advising that the requested and agreed upon information had not been provided and that if the information were not provided on or before January 25, 2010, Plaintiffs would have no option other than to file suit to obtain the information.

31. Defendant failed and refused to respond to this communication or to provide the requested company information for PHG.

32. Over the course of several more weeks, Plaintiffs made numerous attempts to obtain company information for PHG, each of which was met with non-responsive, evasive, and dilatory conduct by Defendant. When Defendant finally agreed to provide the requested information, he subsequently failed or refused to perform that agreement.

33. Based upon Defendant's conduct and concealments, Plaintiffs justifiably suspected that Defendant had diverted cash or assets from PHG to his own use.

34. On February 4, 2010, Plaintiffs filed suit in the Monroe County, Indiana Circuit Court against Defendant asserting claims under the Indiana Business Flexibility Act and for breach of fiduciary duty in an action styled *Thomas C. Huff, et al. vs. Pinnacle Hospitality Group II, LLC, et al.*, Cause No. 53C6-1002-CT-00224 (the "state court litigation").

35. Defendant actively concealed himself to avoid service of process in the state court litigation.

36. Plaintiffs engaged in multiple efforts to locate Defendant upon the commencement of the state court litigation. Ultimately, Plaintiffs learned that Defendant would be attending a meeting of creditors in the United States Bankruptcy Court for the Southern District of Indiana in Indianapolis on behalf of an affiliated entity on July 28, 2010.

37. Upon locating Defendant at the meeting of creditors, Defendant again attempted to avoid service of process by misrepresenting his identity. Defendant was unsuccessful because debtor's counsel identified him and he was thereafter served with a Summons and Plaintiffs' Complaint in the state court litigation.

38. Thereafter, Plaintiffs filed an Amended Complaint in the state court litigation on September 13, 2010, asserting additional claims for conversion and breach of contract.

39. On October 21, 2010, the Monroe County Circuit Court entered judgment against Defendant in the amount of $500,000 in the state court litigation.

40. Plaintiffs own and hold the state court judgment, which remains wholly unsatisfied.

41. Subsequently, Plaintiffs learned that Defendant may be located in Collier County, Florida. As a result, the Indiana judgment was recorded on January 19, 2011 in the public records of Collier County, Florida.

42. Based upon the fact that PHG had no corporate operations which could consume company funds, Defendant's refusal to provide any company information or financial records, Defendant's active concealment and avoidance of service of process, and his other conduct as set forth herein, Plaintiffs justifiably believe Defendant engaged in fraud, larceny, and/or embezzlement.

43. In order to obtain investment funds from Plaintiffs, Defendant provided written financial information including, without limitation, an individual financial statement dated January 2009, which represented the value of Defendant's assets to be $177,887,305 and liabilities to be $143,130,830, for a net worth of $34,766,476.

44. Defendant also made a written proposal to Plaintiffs indicating that he owned eight (8) properties free and clear in Indianapolis, Indiana that had an appraised value of $4,675,000 and produced $330,000 of annual net operating income.

45. Upon information and belief and based upon the schedules filed in connection with his Chapter 7 petition, the financial information provided to Plaintiffs by Defendant in soliciting the $500,000 investment from Plaintiffs was false and fraudulent.

46. Defendant, as the member-manager and majority member of PHG, owed to Plaintiffs fiduciary duties of good faith, loyalty, honesty in fact and full disclosure, among other duties imposed by Indiana law.

47. By his acts and omissions as set forth herein and as currently ascertainable to Plaintiffs, Defendant breached his fiduciary duties to Plaintiff.

48. Defendant's actions or failures to act involved an act or omission undertaken with deliberate intent to cause injury to Plaintiffs or were undertaken with intentional, willful, wanton, reckless or negligent disregard for the best interests of Plaintiffs.

49. Defendant has failed to account for money and property entrusted to him as the member-manager and majority member of PHG, while under a fiduciary duty.

## COUNT ONE

### FALSE REPRESENTATION/ACTUAL FRAUD
### (11 U.S.C. § 523(a)(2)(A))

50. Plaintiffs reallege and incorporate by reference paragraphs 1 through 6 and 7 through 49 as though fully set forth herein.

51. Defendant obtained money from Plaintiffs by false pretenses, false representations, or actual fraud.

52. Plaintiffs justifiably relied upon Defendant's misrepresentations and concealments to their detriment.

53. As a direct and proximate result of Defendant's false pretenses, false representations, concealments, and actual fraud, Plaintiffs have incurred damages in an amount not currently ascertainable, but in excess of $500,000 which should be exempt from discharge pursuant to 11 U.S.C. Section 523(a)(2)(A).

## COUNT TWO

### FRAUDULENT USE OF FALSE FINANCIAL STATEMENTS
### (11 U.S.C. § 523(a)(2)(B))

54. Plaintiffs reallege and incorporate by reference paragraphs 1 through 6 and 7 through 49 as though fully set forth herein.

55. Defendant's acts, omissions, and misrepresentations constitute fraud through which Defendant obtained money or extensions of credit by submitting to Plaintiff's statements

in writing: (i) that were materially false; (ii) respecting Defendant's financial condition; (iii) on which Plaintiff's reasonably relied in advancing money or extending credit; and (iv) that Defendant caused to be made or published with the intent to deceive or with reckless disregard as to truth or falsity.

56. As a direct and proximate result of Defendant's acts, omissions, misrepresentations and use of false financial statements, Plaintiffs have incurred damages in an amount not currently ascertainable, but in excess of $500,000 which should be exempt from discharge pursuant to 11 U.S.C. Section 523(a)(2)(B).

## COUNT THREE

### FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY/EMBEZZLEMENT/LARCENY
### (11 U.S.C. § 523(a)(4))

57. Plaintiffs reallege and incorporate by reference paragraphs 1 through 6 and 7 through 49 as though fully set forth herein.

58. Through his acts, omissions, and misrepresentations, Defendant committed embezzlement resulting in Plaintiffs entrusting funds to Defendant which Defendant converted to his own use and benefit with intent to defraud Plaintiffs.

59. Defendant, as member-manager and majority member of PHG, was entrusted with money and property belonging to Plaintiffs.

60. Defendant's acts and omissions caused Plaintiffs to incur damages and a loss of money or property.

61. Defendant's acts and omissions as set forth herein as currently ascertainable by Plaintiffs constitute defalcation.

62. Defendant's acts and omissions as set forth herein constitute larceny.

63. As a direct and proximate result of Defendant's actions and omissions, Plaintiffs have incurred damages in an amount not ascertainable, but in excess of $500,000 which should be exempt from discharge pursuant to 11 U.S.C. Section 523(a)(4).

## COUNT FOUR

### WILLFUL AND MALICIOUS INJURY
### (11 U.S.C. § 523(a)(6))

64. Plaintiffs reallege and incorporate by reference paragraphs 1 through 6 and 7 through 49 as though fully set forth herein.

65. Defendant's acts and omissions as set forth herein and as currently ascertainable by Plaintiffs were committed with the intent of causing deliberate and intentional harm to Plaintiffs or had a substantial likelihood of causing harm to Plaintiffs.

66. Plaintiffs have suffered a willful and malicious injury, for which Defendant is liable.

67. As a direct and proximate result of Defendant's willful and malicious conduct, Plaintiffs have incurred damages in an amount not currently ascertainable, but in access of $500,000 which should be exempt from discharge pursuant to 11 U.S.C. Section 523(a)(6).

WHEREFORE, Plaintiffs, THOMAS C. HUFF AND KATHLEEN L. HUFF, demand relief against Defendant, PETER T. DVORAK, as follows:

A. A determination by this Court that the amounts owed to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. Section 523;

B. A judgment entered by this Court in favor of Plaintiffs in an amount to be determined at trial from the evidence, but no less than $500,000, in addition to prejudgment and post-judgment interest, attorneys' fees, and costs;

C. A determination by this Court that punitive damages are warranted and should be awarded;

D. In the alternative, for an Order of Restitution; and

E. For such other relief that this Court deems just and proper.

                                       Respectfully submitted,
                                       COHEN & GRIGSBY, P.C.

                                       By: /S/ David T. Lupo
                                            KELLEY GERAGHTY PRICE
                                            Florida Bar No. 889539
                                            DAVID TODD LUPO
                                            Florida Bar No. 0181640
                                            27200 Riverview Ctr. Blvd., Ste. 309
                                            Bonita Springs, Florida 34134
                                            Telephone: (239) 390-1900
                                            Facsimile: (239) 390-1901
                                            E-mail: kprice@cohenlaw.com
                                            E-mail: dlupo@cohenlaw.com

1679752_1.DOC